First case for argument is Maria del Carmen Medina Tovar v. Zuchowski. Counsel, you may proceed. Thank you. Good morning, Your Honors. Philip Smith on behalf of the appellants, Ms. Medina Tovar and her husband, Mr. Alonzo Medina. Congress, Your Honors, I would like to reserve two minutes for rebuttal, if I may, please. It's, may it please the Court, it's the appellant's position that when Congress passed the Equal Access to Justice Act, they had in mind cases exactly like this case. We have a victim of a horrific crime, she was a non-citizen, she had the courage to come forward. Well, the details of the case, are those implicated by the statute somehow? I mean, it doesn't say victims of horrific crimes get attorney's fees. The U visa statute, so for her to vindicate her But the attorney's fee statute doesn't talk at all about that. That's correct, Your Honor. That's correct, Your Honor. And, but the U visa statute, so going to the, to what this case was about, she, as the victim of a horrific crime, applied for U visa status for herself and her husband. Her husband's application was wrongly denied because the agency's regulation was invalid, which is what the Court held in its en banc decision. So put simply, Ms. Medina and her, and her husband had to come to federal court to vindicate their lawful rights. This is what Congress had in mind with the, they allowed There are a lot of statutes that basically say a winner gets fees. This statute doesn't say that, does it? No, it doesn't, Your Honor. It carves out and makes the key question for us the question of whether the government's position was substantially justified. That's a different question than winner gets attorney's fees. So to tell us that your client's ultimately won doesn't really answer the question that the attorney's statute poses. What tells us that the government's position was not substantially justified? Well in order to be substantially justified, there needed to be a basis in law and fact for the, for the regulation. And there were several judges that thought there were. Well in terms of, in the litigation, that's correct, Your Honor. In the burden, of course, is on the government to show the substantial justification. Well, I think the burden is also, I mean, we're talking here about waiver of sovereign immunity, and as I understand the case law, it doesn't say the burden's on the government. It says we waive sovereign immunity cautiously. And I, I, that's correct, Your Honor. And to be substantially justified at the agency level, there needs to be something in the record which justifies the regulation. Some rationale or reason that was provided for why this regulation, in the face of the settled meaning of the term accompanying or following to join, why they deviated from that. And there is nothing in this record. What settled the meeting, as I understand it, our court described that as a question of first impression. In, in the context of the specific U visa statute, that's correct. But what was the settled meaning? Throughout immigration law, Congress has used the term accompanying to following to join, and throughout, in every other context, it always included a derivative spouse at the time the principal is approved for their status. Asylees, refugees, immigrant visas, the state department in its foreign affairs manual which determines when someone is able to get a visa, they had a specific definition. So in all of those situations, accompanying or following to join always included the derivative spouse at the time the principal was approved or admitted into the country. This regulation narrowed that and, and was contrary to that meaning. This is Judge Fletcher. I've got a question. And that is, assuming that I agree with you that the government's position was not substantially justified, not as litigation position, because once the government's taken a position, the litigators, I think, pretty much have to go along with what the government did, but the government's position at the agency level. But I'm not sure that necessarily gets you there because there's another hurdle. And as I understand it, you can correct me if I'm wrong, whether to award attorney's fees under this statute is we reviewed the district court decision for abuse of discretion. Is that right? The district court denied fees. That's correct, your honor. And we, and we review for abuse of discretion? That is correct. Well, even if I agree with you, were I the district judge, that, that itself doesn't necessarily decide the question of fees. Well, our position would be, well, to, it's an abuse of discretion if there's nothing in the record to support the determination that the government was substantially justified. Or if, if there, but there were some things in the record. You know, there was the fact the regulation got passed by an agency with presumable expertise. There are judges at all levels that supported that position. So, isn't there something in the record to support that conclusion? Well, our position that the judges that, the judges that looked at it, were looking, were considering the, the litigation position. And they weren't looking at the, the reasoning that the agency provided at the time they published the regulation. I, I, I haven't read the record in that case, but I would be amazed if that wasn't considered by the panel, by the court, the en banc court. And let's go to the other, we've got the agency also that, that has come up with this interpretation, who presumably had some expertise in the area. So there certainly were some things in the record. And my question is, how much, how weak does the some things have to get before you can say that it is not a reasonable position? Well, we, we would say one, there, there should have been some sort of either contemporaneous or some explanation from the agency itself, rather than the, the agency's attorneys arguing it in court. Of the reason for this regulation, and. Well, judges figured out a reason. I mean, in the en banc dissent by Judge Callahan, she explained the reason why the agency could have breached its interpretation. Well, I think that's right, Your Honor. But it, it's a separate question to, to look and for, for judges or attorneys to identify a possible plausible reason and the actual reason that the agency used. The agency could have, for example, flipped a coin. Now, nobody says they, nobody says they did that. Nobody says they did that. And, and if judges find a reason, it's hard for me to, to project that the agency was flipping a coin, that it didn't have a reason that left it to judges to figure it out. I mean, it's not hard to figure out why the agency may have wanted to adopt this position. Indeed, strikes me as eminently logical. The problem is, as our en banc majority ultimately concluded, that doesn't fit the statutory language. But the reason isn't hard to figure. And as it is, that really does open the door to the possibility of marriage fraud. Because you've got another person being allowed to enter the country who had no connection with the episode that produced the U visa. And so it's not hard to figure out why the agency reached that position. It turned out not to be consistent with the statute according to the majority. But lots of judges disagreed with that. So, what tells us that position's not substantially justified? That the, the marriage fraud explanation has never, was never presented by the agency in promulgating the regulation. It's only been presented to the court to defend their position. I remember when I was, and I'm taking your time, and we'll make sure you get a chance at rebuttal. But I remember in math, when they got to new math back in the late 50s, early 60s, it wasn't that you had the right answer. You had to show your work that you got to the right answer. Well, we don't, we don't really go that way. If, if we have several judges who conclude a position is, is appropriate, is indeed the proper position. The fact that the agency didn't articulate in the same language that they did doesn't really seem to be necessary in order to reach a conclusion that the position was substantially justified, does it? Well, no, I would agree with that, Your Honor. But I, I would also say that at this, once we're at an en banc level, there's always going to be, from our perspective, there will always be federal judges who have seen it the other way. And the court is- Not many cases get to the en banc level, and the reason this case did is that a district judge and two Ninth Circuit judges saw it the way the government saw it. That by itself is a good running start towards saying there must be something there, isn't it? It, it, it is a factor that the court considers, but it doesn't, it's not determinative. And even if you were to find there were some something in the record, the, the district court here didn't evaluate that, that regulation. She said the decision and the government's position was substantially justified. But in terms of, again, in our view, really identifying the reason for this regulation, we don't think that was addressed. What do you think the standard is for substantially justified? Is it, is it, is, we know it's less than, you know, a probable cause. I mean, no, I mean, excuse me. We know it's less than 50 percent. But how, how far less than that is substantially justified? Is it just any credible argument that you wouldn't get an F on in a law exam? What is it? No, no, I wouldn't say that. But it, well, it would, I think what the, the case law says is, is it, is it enough to satisfy a reasonable person? A re, a, a, it's a reasonableness standard. Satisfying as in, that that's the correct answer? Or you go to a reasonable person and the reasonable person says, I'm not saying it's the correct answer, but I'm saying it's a credible answer. Is that, is that what we need? Or do we need to have some, do we need to find some reasonable person out there that says it's the correct answer? It doesn't have to be the correct answer. Okay. Just a reasonable person standard saying it is a reasonable argument. It's not a laughable bad argument. Well, I don't, it wouldn't just be any argument. But that a reasonable person could accept that argument. Yeah, yeah, could accept that argument. Okay. That's good. Thanks. Thank you. We have the luxury of a little more time today because not many cases are being argued, so we will make sure you have a chance at rebuttal. And with that, we'll hear from the government. Your Honor, may it please the Court. Aaron Goldsmith on behalf of the government. The district court did not abuse its discretion in denying appellate's application for EJFEs because the district court's decision had a basis in reason. The court's split of authority as to how the UB's statute should be interpreted. Because it's not the role of this court to substitute its judgment for that of the district court in reviewing the denial of an application for EJFEs, the decision of the district court should be affirmed. And I- You know that, this is Judge Fletcher. That one goes a little too far from me because as I understand your position is, if the district judge has ruled one way and the court of appeals rules the other, there's no possibility of a, of appeal because by definition or at least according to your argument, if the district judge has agreed with the government, the government's position is ipso facto substantially justified. Do you really mean that? Your Honor, perhaps I was not clear in articulating our position. Our position's a little bit more subtle than that. If you look at this court's decision in Gonzales that we cited in our briefs, we're not saying that any time a district court is reversed on appeal, that that means that the government was substantially justified. We're just saying that when you have a split of an authority, and to be clear, in this case, you had 14 judges, if you look at all levels, who considered the question of whether or not the phrase accompanying or following to join was a term of art. And six of them agreed with the plaintiff that it was a term of art. Six of them, again, if you include the district court, said, agreed with the government that it was not a term of art, and then two of the judges at the en banc level didn't address that question. So there was, it wasn't just a split, there was an even split. That if you have that type of split, that is a basis, an appropriate basis for our court to, the district court to look at it and make a determination that it was, that the government was substantially justified. Now, if you're reviewing a decision of the district court in the context of EJIA under the abuse of discretion standard, then what you're looking at, was there a basis, was there a basis and reason for the district court to come to its conclusion? And this split of authority is an objective indicator that would support such a finding. Now, the question of whether the district court could have done something differently in this situation is sort of not implicated by the facts of this case, because the district court did what it did, and we're here reviewing it, you're here reviewing it, rather, under the abuse of discretion standard. And I would, and there seems to be, again, to follow up on your point, Judge Ebel, that reasonable minds could differ. You had that split of authority. There is an objective indicator that the underlying decision, the November 23, 2016, agency decision was reasonable. The district court relied on this fact, and to find that both the agency's underlying decision and the litigation position were reasonable. And as this Court instructed in Gonzales, abuse of discretion is a highly deferential standard, and the Court is not to substitute its view for that of the district court in determining whether or not an application for each of these should be denied. I would like to clarify one point about when we're discussing the underlying agency action that was being challenged in this lawsuit, that was challenged in the complaint, that underlying decision was the November 23, 2016, by USCIS denying Ms. Tovar's petition. And you need look no further than the very first sentence in the complaint to see that that's how the plaintiff framed this claim, and that's what the parties litigated. In that first sentence, plaintiffs say that they, quote, seek an order from the Court setting aside the November 23, 2016, decision by United States Citizenship and Immigration Services, USCIS, denying U derivative status for Mr. Alonzo and enjoining defendants from denying derivative U visa status to Mr. Alonzo solely based because his marriage to Ms. Medina took place after she initially applied for U visa status on June 14, 2013. And that was reiterated again in paragraphs 20 and 28 of the complaint. So that's how the plaintiff framed this claim. That's what we litigated. And the key issue was, is the phrase accompanying or following to join, as it appears in the U visa statute, a term of art? And there was a difference of opinion on this point. Do you need the government's interpretation in order to ferret out marriage fraud? Well, that's a difficult question. And part of the answer is, the agency seemed to think that was the better approach. They had to draw the line somewhere. The only question in this case, and there was no question that the agency had an interest in preventing marriage fraud. The question was, do you draw the line at the time of filing or do you draw the line at the time of adjudication? And the agency believed the better approach would be to draw the line at the time of filing. Now, ultimately, whether that was the better approach or not is totally irrelevant because this Court, sitting on Bonk, made the decision that accompanying and following to join was a term of art and it meant the time of filing. Don't you still have the standard of a bona fide marriage and then you can just take evidence of whatever you want? This doesn't take that issue off the table, does it? No. You still have to show that there still needs to be legitimate marriage, but the agency has a certain expertise, a certain role in looking at and articulating how do we best combat a problem. In this case, the problem was marriage fraud. All it does is it just takes one bright line tool away from the agency. Right. That's right. It took a tool away from the agency. The agency still has authority to address the overall question of marriage fraud and all of its myriad of pieces of evidence that it might think about. Right. And we were never alleging any marriage or fraud. No one was claiming that. You're not. Of course you're not. I just want to be clear on that. So the point was one really of whether or not the statute, whether Congress already made the decision, because once the Court, sitting on Bonk, agreed with the plaintiff that the plaintiff was right, that Congress had drawn the line, then whether the agency had a good reason, bad reason for its decision fell by the wayside, it didn't get to make that decision. Only Congress, if you accept their argument, which ultimately prevailed in this case, then only then Congress drew the line at the time of filing and that's the end of the matter. So these other issues were never really implicated in what we were talking about during this litigation. Let me ask a question going to this question of marriage fraud. How do we know that the agency had marriage fraud in mind as they interpreted the statute? Your Honor, that's a difficult question because we're talking about a 2007 regulation. We never provided an administrative record for that regulation because... I think the answer is we don't know. Isn't that right? Perhaps the agency thinks, but we can't, since we didn't provide a record, there's nothing in the record that would address your question. I understand your concern, but, you know, this was something that was simply, this was a question that was simply outside the scope of the litigation that was actually, the issues that were actually litigated, it was outside the scope of the complaint and it would have been a claim of whether or not the agency adequately explained its basis, whether there was some kind of procedural defect with the 2000 regulation would be barred by the 6-year statute of limitations in any event. So, I don't understand why that's so. If the question is not the reasonableness of the government's litigating position, that's a different question as to the reasonableness of the government's position in the first place, that is to say the reasonableness of promulgating the regulation. Well, that question is a live question. There's no statute of limitations on that question. And I would think it would be highly relevant to answering that question, whether or not the agency had articulated, in support of its interpretation, marriage fraud. And you didn't put anything on the record on that one way or the other. So, Your Honor, I would like to try to address your concern there. The underlying agency action, and I agree that it's not, you just don't look at the litigation position, the underlying agency action is not the regulation. It's the November 23rd decision that they challenged. Well, wait a minute. Wait a minute. But I think the government's decision was based upon the regulation. And the regulation is quite clear. It turns out to be incorrect as an interpretation of the statute. But it's the position of the government. And the government took the position when it promulgated the regulation. You are correct that, of course, that the agency considered its own regulation and relied on its own regulation in reaching the November 23rd decision. We don't— Of course, but if we're talking about the reasonableness of the government action, the action is not only reliance on the regulation. The action is promulgating the regulation in the first place. Don't you think? Your Honor, I see my time has expired. May I address Platt, Judge Fletcher's concern? So we would say no, that the underlying position is simply whether or not the decision was correct or was it, as Plaintiff argued in his complaint, contrary to the U visa statute. That was how they framed the claim, that you violated the statute. And our response is that we didn't, and there was a split of authority on that issue. As to the—I certainly did talk about the regulation, the 2007 regulation, but that was in the context of responding to their EJIA application. My point was this is cases distinguishable by other cases in which EJIA has been awarded, in that there was no dispute of the facts. The agency took a regulation and applied it as written to the facts of the case. Now— I don't want to prolong this too long, but let's assume that you lost at every level. The district court decided against you. The three-judge court decided against you. It went en banc, and the en banc court decided against you. Are you saying that those courts are not allowed to look at the reasonableness of the adoption of the regulation? They're only allowed to look at whether the government followed the regulation? You can't really mean that, can you? Well, of course you look at the reasonableness of the agency's regulation. I'm not trying to suggest otherwise, but— Oh, I thought you were, but okay, fine. Okay. Of course you look at the reasonableness, but the concern that was central to this case is did they take a — adopt a position that was contrary to the statute, and that, in turn, turned on the question of whether accompanying or following to join was a term of art. And that, as I suggest, was a very close call, and there was a split of authority. The district court— No, I understand your position. Okay. Well, thank you, Your Honor. And because the district court did not abuse its discretion in denying the application, we ask that the district court's decision be affirmed. Thank you, Your Honor. Thank you. We're making everybody work overtime this morning. If you ask for two minutes, we'll give you two minutes. Okay. And just briefly, I'm not going to take it, but I think this last point is the point that is where we're really at odds, and that is the district court, in its decision, focused on the decision, the 2016 decision, and didn't really look at the promulgation of the regulation. And we think you have to consider that. Well, at what point in time are you talking about now, when the district court first addressed the underlying merits issue or when it addressed the attorneys' fees issue? Well, in both, the district court went to the decision—well, when it addressed the attorneys— If you talk about the attorneys' fees issue, I don't understand what you're saying, because at that point, it had gone through the whole en banc process. The district court was obviously aware of what happened during that process, which involved a challenge to the underlying regulation. So I don't understand what you're saying when you say the district court ignored that. Well, what I'm—I think what I'm saying is the point that my colleague was trying to make is that the validity of the regulation or the reasonableness of the regulation wasn't before the district court in the EJIA application. And we're saying absolutely it was, and there has to be a basis in the record for that regulation. And there is none. Isn't this an interpretation—a legal interpretation of what the regulation means and whether it's supported by the law or not? Well, there is— As opposed to a factual thing that would be in the record. Some statement by the agency of why they came out with that interpretation and published that regulation. I don't view that as a factual question. That is an aid to a legal question. And there's a different requirement for what has to be or not in the record when you're addressing legal questions. I mean, the question here was, did the statute authorize the rig? That seems to me not to be a record issue. I mean, a record could provide useful information for you. But it is a legal question, isn't it? Well, I think it is a legal question, but to answer that question, there needs to be some indication of why the agency concluded the regulation complied with the statute or the statute required that regulation. Why does there have to be factual record evidence to support that? It's useful sometimes, but if the law is clear, you don't need to—or if you use other interpretive aids of the meaning of the law, you don't always need to base every legal conclusion on a factual finding in the record. Well, I think that's right. At the same time, for the district court judge, there has to be a basis in law, in fact, for its decision. And when I use the word fact, I mean, it's not evidence like we have a photograph of a crime scene, but a factual basis for the agency's determination would be some indication of why they came to the conclusion that they came to. From the agency, as opposed to this litigation where we go back and forth, and we think it's a different question. Thank you. Thank you, Your Honor. Thank you. Thank you. We thank both counsels for your helpful arguments. The case just argued is submitted.
judges: Ebel, FLETCHER, CLIFTON